UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 3:17-cv-2064-JAM |
| | ) |
| WESTPORT CAPITAL MARKETS, LLC, and | ) |
| CHRISTOPHER E. MCCLURE, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## **PROPOSED JURY INSTRUCTIONS**

Plaintiff Securities and Exchange Commission ("the Commission") proposes the following jury instructions for the trial against defendants Westport Capital Markets, LLC ("Westport") and Christopher McClure ("McClure," and together with Westport, "Defendants"). Unless otherwise noted, the parties agree on these proposed instructions. Where the parties do not agree, the Commission's proposed instruction is provided, along with the basis for the defendants' objection to that requested instruction, and the Commission's response. The parties reserve the right to amend these proposed instructions, and/or propose additional instructions as appropriate, based on the evidence adduced at trial and in response to any newly proposed instructions by the other party, including without limitation the right to propose additional instructions addressing any evidence that may be introduced over that party's objection.

**Agreed-Upon Preliminary Instruction**

[To be included with the Court's general preliminary instructions to the jury.]

The plaintiff in this case, the United States Securities and Exchange Commission (the "SEC") is an independent regulatory agency created by Congress.  One of the SEC's primary duties is to enforce the federal securities laws, which are intended to protect the investing public.  The SEC's claims in this case are asserted under different provisions of a federal statute and related rules.  The statute is the known as the Investment Advisers Act of 1940, which I will call the "Advisers Act."

The SEC, as plaintiff, bears the burden of proof in this case.  The standard in this civil case is "preponderance of the evidence."  A preponderance of the evidence means that the evidence persuades you that the SEC's claim is more likely true than not true.  Some of you may have heard of proof "beyond a reasonable doubt," which is the standard of proof for a criminal trial.  This is not a criminal trial and a plaintiff in a civil case does not have to satisfy that standard.[1]

Commonly, a civil action is brought by a private person who has been injured by some conduct by a defendant and seeks damages.  This is not a suit by a private person for damages; this is a suit by the SEC to enforce the federal securities laws.  Unlike a civil damage suit brought by a private party, there is no claim for damages in this case and the SEC need not prove that anyone was harmed.  The question presented to you is whether there has been a violation of the law or not.[2]

---

[1] 3 Kevin F. O'Malley *et al.*, FEDERAL JURY  PRACTICE AND INSTRUCTIONS §104:01 (6th ed. 2014);

[2] *See Graham v. SEC*, 222 F.3d 994, 1001 n.15 (D.C. Cir. 2000); *SEC v. Cook*, 2015 WL 5022152, *17 (S.D. Ind. Aug. 24, 2015); *SEC v. Couch*, 2014 WL 7404127, *7 (N.D. Tex. Dec. 31, 2014); *In re Reserve Fund Secs. & Deriv. Litig.*, 2012 WL 12354220, *1 (S.D.N.Y. Sept. 11, 2012); *SEC v. Prater*, 296 F. Supp. 2d 210, 215 (D. Conn. 2003).

**<u>Agreed-Upon Instruction for Excerpts from [Witness] Deposition Transcript</u>**

[To be included with the Court's general preliminary instructions to the jury.]

Certain testimony will be presented to you through a deposition.  A deposition is the sworn, recorded answers to questions asked a witness in advance of the trial.  Under some circumstances, if a witness cannot be present to testify from the witness stand at trial, that witness's testimony may be presented, under oath, in the form of a deposition.  Sometime before this trial, attorneys representing the parties in this case questioned this witness under oath.  A court reporter was present and recorded the testimony.  The questions and answers will be read and shown to you.  This deposition testimony is entitled to the same consideration as if the witness had been present and had testified from the witness stand in court.[3]

---

[3] *See* 3 Kevin F. O'Malley *et al.*, FEDERAL JURY  PRACTICE AND INSTRUCTIONS §102:23 (6th ed. 2014).

**Commission's Proposed Instruction No. 1:**          **Parties Equal before the Law**

The plaintiff in this case is the Securities and Exchange Commission, which I will refer to as the SEC.  The SEC is an independent agency of the federal government charged with regulating the securities industry.  It has the authority to file lawsuits alleging violations of the federal securities laws.

The defendants in this case are Westport Capital Markets, LLC, which I will refer to as Westport, and Christopher McClure, who is the owner, chief executive officer, chief financial officer, and chief compliance officer of Westport.

You should consider this case as a dispute between persons of equal standing in the community and of equal worth.  An individual, a corporation, and a government agency are equally entitled to a fair trial.  All persons, including individuals, corporations, and government agencies, stand equal before the law and are to be treated as equals.[4]

<u>Defendants' Objection to the Highlighted Text:</u>

Defendants object to the above highlighted text regarding the SEC's authority to file lawsuits because that proposition is – or should be – self-evident and serves no purpose other than to promote the SEC's standing as a "law enforcement authority."  Defendants do not contest the SEC's authority to file lawsuits and the issue is not, therefore, before the jury for its special consideration.   The SEC has no greater right to have the jury instructed about its right to file lawsuits than the Defendants do to have the jury instructed *they* have the right to conform to the law or to defend themselves when sued by the government.  These matters are, as noted, self-evident and serve only to elevate the "mission" or standing of one party above that of the other. The sentence should, therefore, be deleted in its entirety.

---

[4] 3 Kevin F. O'Malley *et al.*, FEDERAL JURY PRACTICE AND INSTRUCTIONS §103:12 (6th ed. 2014); *Wilson v. Vermont Castings, Inc.*, 977 F. Supp. 2d 691, 699 (M.D. Pa. 1997), *aff'd*, 170 F.3d 391 (3d Cir. 1999).

<u>Commission's Response</u>:

The scope of the SEC's authority to file lawsuits is not something within the knowledge of the average lay juror.  The SEC believes that it is important for the jury to understand that it is a party to this lawsuit because it is performing one of its essential functions in acting as a party in this case.

**Agreed-Upon Instruction No. 2:**     <u>**Overview of the SEC's Claims**</u>

The SEC alleges that Westport and McClure violated Sections 206(1) and 207 of the

Investment Advisers Act of 1940, which I will refer to as the "Advisers Act."

I will now instruct you about the law you are to apply to determine whether the SEC has

met its burden of proof on any of these claims.

**Commission's Proposed Instruction No. 3:**          <u>**Statutory Purpose of the Advisers Act**</u>

Congress passed the Advisers Act to eliminate certain abuses in the securities industry and to prevent fraud and other abuses by investment advisers.[5]  The Advisers Act establishes standards of conduct for investment advisers that are enforceable by the SEC.[6]  The Advisers Act was enacted to achieve a high standard of business ethics in the securities industry.[7]

Congress intended that the antifraud provisions in the federal securities laws, including the Advisers Act, should be applied flexibly, not narrowly or rigidly, in order to achieve their purpose of correcting the problems that Congress had identified.[8]

<u>Defendants' Objection to the Highlighted Text:</u>

There is no need for the jury to be "schooled" on the history and purposes of the Advisers Act ("to eliminate certain abuses in the securities industry that were found to have contributed to the stock market crash of 1929 and the Great Depression of the 1930s"), which schooling is both extraneous and prejudicial.  In other words, the SEC has no right for this Court to explain to the jury on the "abuses" of the stock market crash of 1929, the advent of the Great Depression or any other national tragedy in order for the jury to perform its function properly.  Such verbiage is highly inflammatory, but it is hardly "instructive" regarding the issues properly before the jury.  Therefore, the entire instruction should be stricken.

---

[5] *SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 186 (1963); *New York Republican State Committee v. SEC*, 799 F.3d 1126, 1128 (D.C. Cir. 2015); *Abrahamson v. Fleschner*, 568 F.2d 862, 870 (2d Cir. 1977), *cert. denied*, 436 U.S. 913 (1978).

[6] *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 12–13, 34 (1979); *Capital Gains*, 375 U.S. at 191, 200-201; *Tambone I*, 550 F.3d at 123-124.  *See also ZPR Investment Mgt. Inc. v. SEC*, 861 F.3d 1239, 1247 (11th Cir. 2017); *SEC v. Penn*, 225 F. Supp. 3d 225, 236 (S.D.N.Y. 2016).

[7] *Capital Gains*, 375 U.S. at 186.

[8] *Transamerica Mortgage Advisors*, 444 U.S. at 34; *Affiliated Ute Citizens of Utah v. U.S.*, 406 U.S. 128, 151 (1972); *Capital Gains*, 375 U.S. at 195; *SEC v. Fife*, 311 F.3d 1, 11 (1st Cir. 2002), *cert. denied*, 538 U.S. 1031 (2003).  *See also U.S. v. Haddy*, 134 F.3d 542, 549 (3d Cir.), *cert. denied*, 525 U.S. 827 (1998).

<u>Commission's Response</u>:

The language of the proposed instruction is derived substantially verbatim from a number of significant, and controlling court cases that discuss the purpose and framework of how the Advisers Act should be interpreted. These court cases emphasize that the Advisers Act's standards should be applied flexibly and not narrowly to accomplish the purposes of the Act and to prevent the problems that motivated its passage.  The Court itself recognized the importance of these precepts by beginning its summary judgment opinion in its case with the quote from *Capital Gains* that is a key part of this jury instruction.  *See* Dkt. No. 69 at 1.

**Commission's Proposed Instruction No. 4:**          **Fiduciary Duty of Investment Adviser**

Investment advisers owe what the law calls a "fiduciary duty" to their clients and their prospective clients.[9]   A fiduciary duty is the highest duty of good faith, loyalty, and fair dealing known to the law.[10]

An investment adviser's fiduciary duty does not merely prohibit him from making false and misleading statements to his clients and prospective clients, although, of course, those actions are prohibited.  As a fiduciary, an investment adviser has an affirmative duty to act always for the benefit of his clients and prospective clients, to exercise the utmost good faith in dealing with them, to disclose all material facts to them, and to use reasonable care to avoid misleading them.[11]

In particular, an investment adviser must tell his clients about all conflicts of interest which might lead that investment adviser – consciously or unconsciously – to give advice that is not disinterested.[12]

Defendants' Objection to the Highlighted Text:

Defendants object to the characterization of fiduciary duty as the "highest duty . . . known under the law" as both gratuitous and prejudicial.  The substance and meaning of the term "fiduciary duty" is a legitimate consideration for the jury and is addressed at length in the paragraph that succeeds the objectionable language.  It is, however, no more necessary or

---

[9] *Tambone I*, 550 F.3d at 146.  *See also Gibson v. SEC*, 561 F.3d 548, 549 (6th Cir. 2009); *Goldstein v. SEC*, 451 F.3d 873, 881 (D.C. Cir. 2006); *SEC v. DiBella*, 2007 WL 2904211, *12 (D. Conn. Oct. 3, 2007), *aff'd*, 587 F.3d 553 (2d Cir. 2009.

[10] *Compagnie de Reassurance d'Ile de France v. New England Reinsurance Corp.*, 944 F. Supp. 986, 995 (D. Mass. 1996).  *See also LaScala v. Scrufari*, 479 F.3d 213, 220 (2d Cir. 2007); *Sequel Capital, LLC v. Pearson*, 2010 WL 3894209, *8 (N.D. Ill. Sept. 30, 2010).

[11] *Capital Gains*, 375 U.S. at 191-194; *Slattery v. Bower*, 924 F.2d 6, 10 (1st Cir. 1991).  *See also U.S. v. Bloom*, 846 F.3d 243, 247 (7th Cir. 2017); *Geman v. SEC*, 334 F.3d 1183, 1189 (10th Cir. 2003); *SEC v. Gruss*, 2017 WL 1169622, *52 (S.D.N.Y. Mar. 28, 2017); *Trusz v. UBS Realty*, 2016 WL 1559563, *7 (D. Conn. Apr. 18, 2016).

[12] *Capital Gains*, 375 U.S. at 191-92.

appropriate to *characterize* or *rank* the importance of a fiduciary's duty any more than it would be appropriate to instruct a jury that murder in the first degree is the most serious form of murder known under the law.  Such language is both prejudicial and improper and should be struck from the proposed instructions.

Defendant's Proposed Addition:

Defendants propose adding the following sentence at the end of the instruction.  "If an investment adviser properly discloses a conflict of interest to its client, the investment adviser may be entitled to pursue that conflicted transaction depending on the particular facts and circumstances.  The mere existence of a conflict does not make a particular transaction unlawful."

Commission's Response:

The proposed language properly describes the fiduciary duty as the highest duty known to the law.  *See LaScala v. Scrufari*, 479 F.3d 213, 220 (2d Cir. 2007); *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982), *cert. denied*, 459 U.S. 1069 (1982).  This statement accurately describes for the jury the exacting standard against which defendants' conduct should be measured in clear and simple terms.

Further, the Commission objects to the inclusion of the additional sentence proposed by the defendants.  Simply disclosing the existence of a conflicted transaction does not necessarily mean that the adviser is satisfying all of his fiduciary duties to his client.  At a minimum, an adviser must make full and fair disclosure of a conflict to a client sufficient for the client to provide informed consent.  As a fiduciary, an investment adviser has a duty of care to provide investment advice in the best interest of its client, based on the client's objectives.[13]  An

---

[13] *Capital Gains*, 375 U.S. at 194 ("Courts have imposed on a fiduciary an affirmative duty of utmost good faith, and full and fair disclosure of all material facts, as well as an affirmative obligation to employ reasonable care to

investment adviser also has a duty of loyalty, requiring the adviser to eliminate or make full and fair disclosure of all conflicts of interest which might incline an investment adviser--consciously or unconsciously--to render advice which is not disinterested such that a client can provide informed consent to the conflict.[14]  An adviser who makes full and fair disclosure of a conflict of interest may avoid breaching the duty of loyalty, but the Commission disagrees with the concept that a fiduciary is more broadly "entitled" to repeatedly engage in conflicted transactions.  For instance, an adviser might act consistently with the duty of loyalty by fully and fairly disclosing a conflict of interest associated with accepting mutual fund 12b-1 fees.  That same adviser would breach the duty of care by repeatedly investing clients in funds with 12b-1 fees when equivalent funds or share classes, with lower costs and higher returns for the client, were available without 12b-1 fees.

---

avoid misleading his clients.").  *See also SEC v. Moran*, 944 F. Supp. 286, 297 (S.D.N.Y 1996) ("Investment advisers are entrusted with the responsibility and duty to act in the best interest of their clients.").
[14] *Capital Gains*, 375 U.S. at 191-92.

**Agreed-Upon Instruction No. 5:      Advisers Act Section 206(1) – Elements**

Section 206(1) provides: "[i]t shall be unlawful for an investment adviser, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly to employ any device, scheme or artifice to defraud any client or prospective client." To prove that Westport and McClure violated Section 206(1) of the Advisers Act, the SEC must show by a preponderance of the evidence:

First, that Westport and McClure were investment advisers;

Second, that Westport and McClure used mail or the means or instrumentalities of interstate commerce in connection with their conduct;

Third, that Westport and McClure directly or indirectly employed a device, scheme, or artifice to defraud a client or prospective client;[15] and

Fourth, that Westport and McClure acted at least recklessly, or knowingly, or with intent to defraud.

An "investment adviser" includes any person who, for compensation, engages in the business of advising others as to the value of securities or the advisability of investing in, purchasing or selling securities, or who, for compensation and as part of a regular business, issues or promulgates analyses or reports concerning securities.[16] The parties agree that Westport was registered with the SEC as an investment adviser for all times relevant to this case, and that McClure was also an investment adviser while working at Westport.[17] The first element of the SEC's Section 206(1) claim is thus established.

---

[15] 15 U.S.C.§80b-6(1).

[16] 15 U.S.C. §80b-2(a)(11).

[17] Dkt. No. 15 at 3, ¶IV.1.

The second element of the SEC's Section 206(1) claim has also been established because the parties have agreed Westport and McClure used mail, and the means or instrumentalities of interstate commerce, including email and telephone calls, to communicate with their advisory clients about their advisory accounts.[18]

---

[18] *See* Joint Pretrial Memorandum, at 5, Stipulation C.

**Commission's Proposed Instruction 6 - <u>Advisers Act Section 206(1) – Scheme, Device or Artifice to Defraud</u>**

    A "device" is an invention, a contrivance, or the result of some plan or design.  A "scheme" is a project or a plan formed to accomplish some purpose or a program of something to be done.  An "artifice" is an ingenious contrivance or plan of some kind.  A "device, scheme, or artifice to defraud" means the forming of some invention, contrivance, plan, or design to trick or to deceive in order to obtain money or something of value.[19]  A "device, scheme or artifice to defraud" may include disseminating affirmative misstatements of material fact or omissions of material facts.[20]  The SEC does not need to prove that any client or prospective client was actually defrauded or actually suffered an injury.[21]

    An investment adviser's failure to disclose potential conflicts of interest to its clients constitutes fraud within the meaning of Section 206(1).[22]  I am instructing you that Westport and McClure had conflicts of interests that arose from two categories of transactions – 1) when they sold syndicate offerings to their clients for a higher price than they bought them, and 2) when they invested their clients in mutual funds that paid them ongoing 12b-1 fees.[23]  I am also instructing you that Westport and McClure did not adequately disclose these conflicts of interest to their

---

[19] *Lorenzo v. SEC*, 139 S. Ct. 1094, 1101 (2019) (construing identical language in Rule 10b-5(a), 17 C.F.R. §240.10b-5); *Aaron v. SEC*, 446 U.S. 680, 695 n.13 (1980); 2B FEDERAL JURY  PRACTICE AND INSTRUCTIONS §62.13 (6th ed. 2014).

[20] *Lorenzo*, 139 S. Ct. at 1100 (construing identical language in Rule 10b-5(a), 17 C.F.R. §240.10b-5); *SEC v. Bolla*, 401 F. Supp. 2d 43, 66-68 (D.D.C. 2005) (non-disclosure and misstatements by a fiduciary can be scheme or artifice to defraud in violation of §206(1)).

[21] *See* Instruction No. 13.

[22] *Robare Group, Ltd. v. S.E.C.*, 922 F.3d 468, 472 (D.C. Cir. 2019); *SEC v. Washington Inv. Network*, 475 F.3d 392, 404 (D.C. Cir. 2007); *U.S. v. Tagliaferri*, 820 F.3d 568, 572 (2d Cir. 2016); *Fundamental Portfolio Advisors, Inc.*, Investment Advisers Act Rel. No. 2146, 2003 WL 21658248, *15, n.54 (SEC July 15, 2003).

[23] Order Granting in Part and Denying in Part SEC's Motion for Summary Judgment, Dkt. No. 69, at 5.

clients.[24]  I thus instruct you that the third element of the SEC's Section 206(1) claim is established as a matter of law.

Defendants' Objection to the Highlighted Text:

Defendants object to the highlighted text on several grounds.  First, reference to the Court's findings, i.e., that defendants failed to disclose a conflict of interest, is premature, as these findings are the subject of a pending Motion for Reconsideration (Doc. No. 72). The SEC's proposed description of the Court's findings may prove inaccurate should the Court grant the defendants' motion and modify its Ruling on Plaintiff's Motion for Summary Judgment per the defendants' request.  Second, the jury should not be specifically informed of the Court's findings in connection with the SEC's summary judgment motion.  Telling the jury about the Court's findings as to certain elements of the SEC's charges unfairly creates a risk that the jury will regard such findings as indicating the Court's approval of the SEC's case generally.  Third, there is no need for the jury to be informed that the Court made certain findings relating to elements of the SEC's charges.  It is enough for the jurors to know simply that they are not being asked to decide certain elements of the claims and to be instructed that they should not draw any inferences from the fact that such elements are not in dispute for purposes of the trial.

Commission's Response:

If the Court changes its existing ruling in response to the defendants' motion for reconsideration, the SEC would submit a new proposed instruction on this element.  But assuming the court does not change its order, the SEC believes that it is appropriate for the Court to instruct the jury about the element of the offense and why it has been established.

---

[24] *Id.* at 10-11.

**Agreed-Upon Instruction No. 7:**       <u>**Advisers Act Section 206(1) – State of Mind**</u>

The next element of the SEC's Section 206(1) claim that it is up to you to determine is whether the SEC has shown by a preponderance of the evidence that Westport and McClure acted with the required state of mind.  There are several ways that the SEC may satisfy the state of mind requirement.

First, the SEC may show that Defendants acted with "intent to defraud".[25]  To act with intent to defraud means to act knowingly and with a specific intent to deceive, manipulate, or defraud.[26]  Intent to defraud may be inferred from a defendant's statements or conduct.[27]

Second, the SEC may show that Defendants acted with a high degree of recklessness. Recklessness is conduct involving more than simple, or even inexcusable negligence, but is an extreme departure from the standards of ordinary care, which presents a danger of misleading other persons that is either known to the defendant or is so obvious that the defendant must have been aware of it.[28]  Recklessness may be established by demonstrating that Westport and McClure had a reckless disregard for the truth or that they did not have a genuine belief that information they provided was accurate and complete in all material respects.[29]

---

[25] *SEC v. Penn*, 225 F. Supp. 3d 225, 236-27 (S.D.N.Y. 2016); *SEC v. EagleEye Asset Management, LLC*, 975 F. Supp. 2d 151, 158 (D. Mass. 2013).  *See also Vernazza v. SEC*, 327 F.3d 851, 859-860 (9th Cir. 2003); *SEC v. Steadman*, 967 F.2d 638, 641 n.3 (D.C. Cir. 1992).

[26] *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 (1976); 3B FEDERAL JURY PRACTICE AND INSTRUCTIONS §162:232 (6th ed. 2014).

[27] *U.S. v. Mousli*, 511 F.3d 7, 15 (1st Cir. 2007).  *See also SEC v. Infinity Group Co*., 212 F.3d 180, 193 (3d Cir. 2000), *cert. denied*, 532 U.S. 905 (2001); *SEC v. McGinn, Smith & Co*., 2011 WL 1770472, *3 (N.D.N.Y. May 9, 2011); 3B FEDERAL JURY PRACTICE AND INSTRUCTIONS §162:232 (6th ed. 2014).

[28] *Steadman*, 967 F.2d at 641; *SEC v. Moran*, 922 F. Supp. 867, 897 (S.D.N.Y. 1996); *see also Brennan v. Zafgen, Inc*., 853 F.3d 606, 613 (1st Cir. 2017); 3B FEDERAL JURY PRACTICE AND INSTRUCTIONS  §162:284 (6th ed. 2014)

[29] *SEC v. Ahmed*, 308 F. Supp. 3d 628, 658 (D. Conn. 2018) (discussing scienter for purposes of Exchange Act Section 10(b) which is the same as Exchange Act Section 206(1), *see Penn*, 225 F. Supp. 3d at 237).

**Commission's Proposed Instruction No. 8:**          **Advisers Act Section 207**

Section 207 of the Advisers Act prohibits materially false and misleading statements in a registration application or report that an investment adviser is required to file with the SEC.[30] One of the required documents is a registration form called a Form ADV.  The Form ADV requires certain mandatory disclosures to ensure that material information about an investment adviser's practices and policies is disclosed to investors.[31]

To prove that Westport and McClure violated Section 207 of the Advisers Act, the SEC must show by a preponderance of the evidence that:

(1)      Westport and McClure filed a required registration form or report with the SEC;

(2)      The form or report they filed contained an untrue statement of a material fact, or omitted to state a material fact that was required to be stated; and

(3)      They acted willfully.[32]

The parties have agreed that Westport was registered with the SEC as an investment adviser and that McClure was an investment adviser while he worked at Westport.[33]  As an investment adviser registered with the SEC, Westport was required to file an application for investment adviser registration on Form ADV and update it annually.[34]  Form ADV requires an investment adviser to disclose certain basic information about its business.  I am instructing you

---

[30]15 U.S.C. §80b-7.

[31] 17 C.F.R. §§275.203-1, 275.204-3; *Vernazza v. SEC*, 327 F.3d 851, 860 (9th Cir. 2003).

[32] 15 U.S.C. §80b-7.

[33] Dkt. No. 15 at 3, ¶IV.1.

[34] 17 C.F.R. §279.1.  *See also Montford & Co., Inc. v. SEC*, 793 F.3d 76, 78 (D.C. Cir. 2015); *Vernazza v. SEC*, 327 F.3d 851, 856 (9th Cir. 2003); *SEC v. Locke Capital Management Inc.*, 794 F. Supp. 2d 355, 367 (D.R.I. 2011).

that the first element of the SEC's Section 207 claim has been satisfied as a matter of law for both Westport and McClure.

I am also instructing you that the second element of the SEC's Section 207 claim has been established as a matter of law. The Forms ADV filed by Westport and signed by McClure were materially false because 1) they falsely stated that Westport did not engage in principal transactions with advisory clients and 2) they falsely omitted disclosure that Westport and its supervised persons received 12b-1 fees from the sale of mutual funds.[35]

Defendants' Objection to the Highlighted Text:

Defendants object to the highlighted text on several grounds. First, reference to the Court's findings, i.e., that "the Forms ADV filed by Westport and McClure were materially false," is premature, as these findings are the subject of a pending Motion for Reconsideration (Doc. No. 72). The SEC's proposed description of the Court's findings may prove inaccurate should the Court grant the defendants' motion and modify its Ruling on Plaintiff's Motion for Summary Judgment per the defendants' request. Second, the jury should not be specifically informed of the Court's findings in connection with the SEC's summary judgment motion. Telling the jury about the Court's findings as to certain elements of the SEC's charges unfairly creates a risk that the jury will regard such findings as indicating the Court's approval of the SEC's case generally. Third, there is no need for the jury to be informed that the Court made certain findings relating to elements of the SEC's charges. It is enough for the jurors to know simply that they are not being asked to decide certain elements of the claims and to be instructed that they should not draw any inferences from the fact that such elements are not in dispute for purposes of the trial.

---

[35] *See* Order Granting in Part and Denying in Part SEC's Motion for Summary Judgment, Dkt. No. 69, at 21.

<u>Commission's Response</u>:

      If the Court changes its existing ruling in response to the defendants' motion for reconsideration, the SEC would submit a new proposed instruction on this element.  But assuming the court does not change its order, the SEC believes that it is appropriate for the Court to instruct the jury about the element of the offense and why it has been established.

**Commission's Proposed Instruction No. 9:**      **Advisers Act Section 207 -  State of Mind**

The third element of the SEC's Section 207 claim that it is up to you to determine is

whether Westport and McClure acted willfully.

A finding of willfulness does not mean that a person intended to violate the law.  It means

that the person acted consciously and intentionally.  In other words, the SEC must show by a

preponderance of the evidence that Westport and McClure submitted at least one Form ADV

knowing that it contained materially false information.[36]

McClure was responsible for signing Westport's Forms ADV and certifying, under the

pains and penalties of perjury, that the statements in those Forms ADV were accurate.[37]

Defendants' Objection to the Highlighted Text:

Defendants object to the preceding sentence ("McClure was responsible for signing

Westport's Forms ADV and certifying, under the pains and penalties of perjury, that the

statements in those Forms ADV were accurate") on the grounds that the entire single-sentence

paragraph regarding McClure's "responsibilities" and his signing of an ADV "under pains of

perjury" is completely superfluous and inappropriate for a jury instruction.  The sentence is

simply a statement of certain evidentiary matters plaintiff hopes to prove in their case-in-chief,

but such language has not been stipulated or agreed to and has no place in a jury charge.  It

should, therefore, be stricken.

---

[36] *Mathis v. SEC*, 671 F.3d 210, 218 (2d Cir. 2012); *Wonsover v. SEC*, 205 F.3d 408, 415-415 (D.C. Cir. 2000); *Steadman v. SEC*, 603 F.2d 1126, 1135 (5th Cir. 1979), *aff'd*, 450 U.S. 91 (1981); *Nassar & Co., Inc. v. SEC*, 566 F.2d 790, 795 n.3 (D.C. Cir. 1977); *Nees v. SEC*, 414 F.2d 211, 221 (9th Cir. 1969); *SEC v. K.W. Brown & Co.*, 555 F. Supp. 2d 1275, 1309 (S.D. Fla. 2007).

[37] Dkt. No. 58-1 at 44, ¶¶77, 78.

Commission's Response:

The defendants did not contest the highlighted statements in response to the Commission's motion for summary judgment.  Rather, they stated that these statements were admitted.  *See* Dkt. No. 58-1 at 44, ¶¶77, 78.  Defendants are not acting in good faith by now seeking to put at issue a fact they admitted at the summary judgment stage.  Their responses at the summary judgment stage are effectively admissions and should be treated as such by the Court.

**Agreed-Upon Instruction No. 10:** <u>**Evidence of State of Mind**</u>

The question of whether Defendants acted intentionally, knowingly, recklessly, or willfully is a question of fact for you to determine, like any other fact question. A person's state of mind can be proven by either direct evidence or circumstantial evidence. Direct proof of state of mind is often not available, and it is not required. You may infer a defendant's state of mind from the defendant's actions and words in light of all the circumstances at that time.[38]

When considering Westport's state of mind, you should remember that Westport is a company that is owned and controlled by McClure. Westport can only act when McClure or another of its employees acts on its behalf. As a result, for purposes of determining whether Westport acted with a certain state of mind, McClure's state of mind is Westport's state of mind.[39]

You cannot peer into McClure's head to see what he was thinking at some time in the past. Therefore, you may determine whether McClure acted intentionally, knowingly, recklessly, or willfully based upon circumstantial evidence about his actions and the surrounding context, and based upon the reasonable inferences that you may draw from the evidence presented to you. Whether you consider direct or circumstantial evidence, it is the SEC's burden to prove by a preponderance of the evidence that McClure and Westport acted with the state of mind that is required for each element of each claim.

---

[38] *Herman & MacLean v. Huddleston*, 459 U.S. 375, 390 n.30 (1983); *U.S. v. Rajaratnam*, 719 F.3d 139, 154 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 2820 (2014); *SEC v. Constantin*, 939 F. Supp. 2d 288, 309 n.14 (S.D.N.Y. 2013); 3 FEDERAL JURY PRACTICE AND INSTRUCTIONS §§121:01, 162:232 (6th ed. 2014).

[39] *SEC v. Manor Nursing Ctrs., Inc.,* 458 F.2d 1082, 1089 n.18 (2d Cir. 1972) (scienter of a company's management can be imputed to the company); *In re Centennial Technologies Litig.*, 20 F. Supp. 2d 119, 126 (D. Mass. 1997); *SEC v. City of Miami*, 2013 WL 6842072, *15 (S.D. Fla. Dec. 27. 2013); *SEC v. Elliot*, 2012 WL 2161647, *7 (S.D.N.Y. June 12, 2012).

**Agreed Upon Instruction No. 11:**   **Affirmative Defenses**

[This instruction is proposed only if the Court does not exclude evidence concerning Defendants' affirmative defense of reliance on Regulatory Compliance]

Westport and McClure have asserted as an affirmative defense that, even if the elements required to prove violations of Sections 206(1) and 207 of the Advisers Act have been met, their conduct is excused because they relied on advice provided by the compliance consulting firm named Regulatory Compliance. Because they have raised this argument as an affirmative defense, defendants have the burden of proving that defense by a preponderance of the evidence.[40] We already discussed what preponderance of the evidence means, but as a reminder, it is evidence that persuades you that the Defendant's defense is more likely true than not true.[41]

---

[40] *Munn v. Hotchkiss Sch.*, 24 F.3d 155, 186 (D. Conn. 2014) (citing *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 439-40 (2010)).

[41] *See* Preliminary Instruction.

**Agreed Upon Instruction No. 12:** <u>**Consultations with a Regulatory Consultant**</u>

[This instruction is proposed only if the Court does not exclude evidence concerning Regulatory Compliance]

Reliance on the advice of professionals is not a complete defense to the SEC's claims in and of itself. It is, however, a potential means of demonstrating good faith and may represent evidence of an absence of intent to defraud. To decide whether such claimed reliance was in good faith, defendants must prove, by a preponderance of the evidence: the following four elements:

1)   that Westport and McClure sought advice from someone who they believed was a competent professional concerning the legality of their conduct,

2)   that Westport and McClure made a complete disclosure to that professional of all the relevant facts known to them at the time,

3)   that Westport and McClure received actual advice from that professional that their conduct was legal, and

4)   that Westport and McClure followed the advice they were given in good faith.[42]

---

[42] *Markowski v. SEC*, 34 F.3d 99, 104-05 (2d Cir. 1994); *Manor Nursing*, 458 F.2d at 1101-02; *SEC v. Jankovic*, No. 15-cv-1248, 2017 WL 1067788, 17 (S.D.N.Y. Mar. 21, 2017) ("[t]he Second Circuit has made clear that reliance upon advice of counsel is a defense only if an individual" meets this four part test); *SEC v. Wyly*, 950 F. Supp. 2d 547, 565 (S.D.N.Y. 2013).

**Agreed Upon Instruction No. 13:** <u>**SEC Not Required to Prove Reliance, Harm, or Loss**</u>
<u>**Causation**</u>

For the claims that I have just discussed, the SEC does not need to prove that any person actually relied upon fraudulent statements by Defendants,[43] or that any person actually suffered any harm as a result of their fraudulent conduct or statements.[44]

When you consider whether Defendants committed any of the fraud violations alleged by the SEC, you should not consider or speculate about whether their conduct caused economic harm or other harm to any other person.

---

[43] *Capital Gains,* 375 U.S. at 192; *SEC v. Tambone*, 597 F.3d 436, 447 n.9 (1st Cir. 2010); *SEC v. Esposito*, 2017 WL 1398318, *6 (D. Mass. Apr. 14, 2017).  *See also SEC v. Morgan Keegan & Co., Inc*., 678 F.3d 1233, 1244 (11th Cir. 2012).

[44] *Graham v. SEC*, 222 F.3d 994, 1001 n.15 (D.C. Cir. 2000); *SEC v. Cook*, 2015 WL 5022152, *17 (S.D. Ind. Aug. 24, 2015); *In re Reserve Fund Secs. & Deriv. Litig*., 2012 WL 12354220, *1 (S.D.N.Y. Sept. 11, 2012); *SEC v. Prater*, 296 F. Supp. 2d 210, 215 (D. Conn. 2003).

**Agreed Upon Instruction No. 14:** <u>**Jury Should Not Consider Potential Remedies or**</u> <u>**Sanctions**</u>

     You are to determine only whether Defendants violated the federal securities laws as I have described them to you.  This is not the kind of case in which the jury decides what damages or other legal relief the plaintiff would be entitled to.  If you find that Defendants violated the federal securities laws, it will be my job to determine what the appropriate remedies  or sanctions should be.  When you consider whether Defendants committed any of the violations alleged by the SEC, you should not consider or speculate about what kind of remedies or sanctions I might impose.[45]

---

[45] *SEC v. Lipson*, 278 F.3d 656, 662 (7th Cir. 2002); *SEC v. Ehrenkrantz King Nussbaum, Inc.*, 2012 WL 893917, *16 (E.D.N.Y. Mar. 15, 2012); *SEC v. Badian*, 822 F. Supp. 2d 352, 365 (S.D.N.Y. 2011); *SEC v. Castaldo*, 2009 WL 2591376, *1 (S.D.N.Y. Aug. 19, 2009).