# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

SECURITIES AND EXCHANGE
COMMISSION,
    *Plaintiff*,

v.

WESTPORT CAPITAL MARKETS LLC. *et al.*,
    *Defendants*.

No. 3:17-cv-02064 (JAM)

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF SEC'S MOTION *IN LIMINE* TO PRECLUDE EVIDENCE REGARDING COMPLIANCE CONSULTANT

The Securities and Exchange Commission ("SEC") has sued Westport Capital Markets, LLC, and its owner and chief executive officer Christopher E. McClure, for violating the Investment Advisers Act of 1940. Following my ruling on summary judgment, *SEC v. Westport Capital Markets LLC*, 408 F. Supp. 3d 93 (D. Conn. 2019) (Doc. #69), the case is soon proceeding to trial on two counts involving allegations that Westport and McClure defrauded their clients and willfully made untrue statements in filings with the SEC.

A perennial issue in this case has been defendants' claimed reliance on the advice of Regulatory Compliance LLC ("RC"), a "regulatory compliance" consultancy service. The SEC has now moved *in limine* to preclude evidence relating to Westport and McClure's communications with RC. Doc. #79. For the reasons that follow, I will largely deny the SEC's motion.

### BACKGROUND

The factual background of this case is described in detail in the Court's ruling on the SEC's motion for summary judgment. *See Westport Capital Markets*, 408 F. Supp. 3d at 99-103. As relevant to this motion *in limine*, for the entire period in which the SEC accuses defendants of

1

wrongdoing, Westport had a contract with RC to provide a variety of "compliance services:" accounting support, compliance advice for Westport as a broker-dealer, and compliance advice for Westport as a registered investment advisor. *See Westport Capital Markets*, 408 F. Supp. 3d at 102.

It is uncontested that RC assisted Westport and McClure in preparing an important disclosure form, the Forms ADV, that was both filed with the SEC and sent to Westport's clients. It is likewise uncontested that these Forms ADV were the closest Westport came to disclosing its various conflicts of interest to its clients. But the parties fiercely contest the nature of RC's assistance in preparing the Forms ADV, whether and to what extent Westport and McClure actually relied on RC's advice on the Forms ADV, what advice about disclosures other than the content of the Forms ADV Westport and McClure solicited or received from RC, and what Westport disclosed to RC itself about its conflicted investment activities.[1]

My summary judgment ruling only briefly discussed Westport and McClure's claimed reliance on RC's advice. I explained that, although "a substantial question exists whether and to what extent Westport and McClure may rely on their dealings with non-attorneys at Regulatory Compliance to defend against this SEC action," it was not necessary for me to resolve the parties' legal or factual disputes over the RC advice at that stage as to the remaining counts in this case because there were sufficient other reasons to deny summary judgment on those counts. *See Westport Capital Markets*, 408 F. Supp. 3d at 102-03.

---

[1] Voluminous briefing, exhibits, and excerpts of deposition testimony have been supplied, both in dispositive motion briefing and in the present motion *in limine*, supporting each party's view of the available facts. *See* Docs. #47 (exhibits for SEC's motion for summary judgment); #58-2 (responsive exhibits from Westport and McClure's opposition); #79 (still more exhibits supporting SEC's motion *in limine*); #84 (same, opposing the SEC's motion *in limine*).

Nonetheless, I invited the SEC to move at the time of trial "to preclude evidence or for issuance of limiting instructions to the extent that it is able to show, as a matter of law, that Westport and McClure were not entitled to rely on guidance they received from Regulatory Compliance or that Westport and McClure's dealings with Regulatory Compliance are not otherwise relevant for purposes of the SEC's claims." *Westport Capital Markets*, 408 F. Supp. 3d at 103 n. 4. The SEC has so moved, Doc. #79, and Westport and McClure have opposed the SEC's motion, Doc. #84.

## DISCUSSION

The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence. *See Luce v. United States*, 469 U.S. 38, 40 n. 2 (1984); *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). The SEC argues that I should preclude all evidence of Westport and McClure's communications with RC as irrelevant and prejudicial, because the evidence does not go to any element of the SEC's case-in-chief or any element of a defense. I will consider each of the SEC's arguments in turn.

### *Uncontested portions of the SEC's motion* in limine

The SEC has formally moved to preclude admission of evidence as to Westport and McClure's ninth affirmative defense, which reads "Plaintiff's claims are barred because Defendants acted in good faith in relying on the advice and counsel of professionals engaged to ensure regulatory compliance." Doc. #11 at 11 (Answer). I understand Westport and McClure, in briefing on this motion and in briefing on summary judgment, to concede that their reliance on RC does not constitute an affirmative defense (as distinct from an issue concerning the mental state that the SEC must prove in its case-in-chief). *See* Doc. #64 at 22 (Westport and McClure's PowerPoint presentation used at oral argument on summary judgment motions, declaring "Reliance on anyone or anything is NOT a formal, affirmative defense"); Doc. #84 at 3

3

(Westport and McClure's briefing on motion *in limine*, repeating this point); *see also United States v. Scully*, 877 F.3d 464, 476 (2d Cir. 2017) ("In a fraud case . . . the advice-of-counsel defense is not an affirmative defense"). Accordingly, I will grant the SEC's motion *in limine* to the extent it seeks to preclude Westport from advancing reliance on counsel as an affirmative defense.

Likewise, the SEC has moved to exclude evidence concerning the work and knowledge of two RC employees who provided accounting support services to Westport in its capacity as a broker-dealer. The SEC argues that these two people, Walter Costenbader and Stacy Peters, did not provide compliance advice to Westport and did not communicate about Westport with the RC employees who did provide compliance advice. *See* Doc. #79 at 25-27 (SEC's motion *in limine*). Although Westport and McClure have purported to oppose the SEC's motion *in limine* in its entirety, they direct no arguments to the exclusion of this evidence or explain why this evidence is relevant to their defense. Moreover, I understand Westport and McClure's defense, at least as it respects their interactions with RC, to be premised on RC's provision of compliance advice, rather than accounting advice. As the SEC explains, it is uncontested that neither Costenbader or Peters are alleged to have supplied compliance advice. *See* Docs. #84, #99 (Westport and McClure opposition and surreply).

I agree with the SEC that this information is not relevant to the case; what little probative value it has is outweighed by its potential to confuse the jury by confusing the issues involved in Westport and McClure's reliance on RC. I will accordingly grant the SEC's motion *in limine* to the extent to which it seeks to preclude evidence concerning the work and knowledge of Costenbader and Peters.

4

*Availability of Advice-of-Counsel Defense to Reliance on "Regulatory Consultants"*

The SEC argues that, even conceding the facts as stated by Westport and McClure, "good faith reliance on compliance professionals" should not be recognized as relevant to whether the defendants acted fraudulently or willfully because the advice was not legal advice rendered by attorneys, and "the distinction between legal advice, which has traditionally been the basis of a recognized defense [advice of counsel], and compliance advice given by non-lawyers, which has not, is meaningful." Doc. #79 at 3-4. Westport and McClure respond that their communications with RC are relevant to their state of mind: their reliance on RC is evidence of their lack of intent to conceal their conflicts of interest, because RC led them to believe, wrongly, that their attempts to disclose their conflicts of interest were sufficient. Doc. #84 at 11.

I agree with Westport and McClure. The defendants are not barred from advancing evidence of their consultations with RC simply because RC consultants were not attorneys. Although there are no cases recognizing an "advice of regulatory professional defense," it would be formalist in the extreme to forbid a defendant from putting forward evidence that it had relied in good faith on persons it thought were experts in the law simply because those persons lacked law licenses.[2]

As Westport and McClure note, there is plentiful caselaw in the tax context that "[g]ood faith reliance on professional advice" is a defense to tax laws that can be violated only by a

---

[2] Westport and the SEC point to only two cases recognizing a "reliance on regulatory professional" defense, both of which are SEC internal proceedings that accepted it *arguendo*, applied the advice of counsel test, and rejected it on the merits. *See Matter of Edgar R. Page*, SEC Release No. 4400, 2016 WL 3030845, at *6 (May 27, 2016) (assuming arguendo "that engagement of compliance professionals—as compared to counsel— might under some circumstances mitigate the egregiousness of a wrongdoer's misconduct," but concluding that the alleged reliance was, in fact, not mitigating); *In the Matter of the Robare Grp., Ltd., Mark L. Robare, & Jack L. Jones, Jr.,* SEC Release No. 4566, 2016 WL 6596009 (Nov. 7, 2016) ("Neither Respondents nor the law judge cite any case recognizing a defense of reliance on compliance consultants").

(continued…)

5

showing the defendant acted willfully, and even to tax laws that can be violated by negligence. *Addington v. Comm'r*, 205 F.3d 54, 58 (2d Cir. 2000) (Sotomayor, J.); *accord United States v. Boyle*, 469 U.S. 241, 250 (1985). As the Second Circuit explained in *Addington*, the touchstone in examining reliance on advice is the expertise of the expert, and not her licensure. *Ibid.*[3]

Of course, the relative expertise of the advisor is relevant in determining the reasonableness of reliance on that advice, as is the credibility of one who says they relied on that advisor in good faith. The adviser in *Addington*, for example, was a barred lawyer and professor of tax law at New York University School of Law, but the Second Circuit held it objectively unreasonable to rely on his tax law advice because he knew nothing about the specific subject matter to which his advice pertained. *Id*. at 58-59; *see also United States v. Evangelista*, 122 F.3d 112, 118 (2d Cir. 1997) (analogizing tax law professional advice defenses to the advice of counsel defense). But the parties dispute whether RC, or the specific RC personnel allegedly relied upon, were experts on which it was reasonable to rely. This dispute on a question of fact is properly an issue for the jury. At this motion *in limine* stage, the fact that RC's staff were not licensed lawyers does not serve as a legally sufficient basis to bar Westport and McClure from introducing evidence that it relied in good faith on RC's advice.[4]

---

[3] Indeed, even the attorney-client privilege does not necessarily require that the "attorney" be a barred attorney. *See generally* 1 Paul Rice, et al, ATTORNEY-CLIENT PRIVILEGE IN THE UNITED STATES § 3:2 (collecting cases).

[4] The SEC argues that Westport and McClure are categorically precluded from introducing evidence of reliance on RC's advice because the contracts between Westport and RC indicated that RC would not render any "legal or financial advice relating to . . . compliance with securities laws." *Westport Capital Markets*, 408 F. Supp. 3d at 107; *see* Doc. #79 at 8-10. I do not agree. Although I explained in my summary judgment opinion that these contracts meant that "no reasonable jury could conclude that Westport and McClure could reasonably have relied on any advice from the consultant that excuses them from their negligent failure to disclose their conflict of interest arising from their syndicated offering transactions with their clients," *id*. at 108, that Westport and McClure's reliance on alleged legal advice from RC was *unreasonable* does not mean that they did not receive legal advice, or that they did not rely on it in good faith. It simply means that, as I explained in my summary judgment opinion, even if they relied on RC's advice in good faith, they were negligent in doing so on the facts presented there. That the contracts may be probative of the SEC's claim that Westport and McClure never *actually* relied on RC's advice (because they never (continued…)

6

*Satisfactory showing of reliance on advice*

The SEC argues that binding Second Circuit precedent precludes evidence of reliance on the advice of a compliance expert unless Westport and McClure proffer "evidence such that a reasonable juror could find" that:

> 1. Before taking action, [Westport and McClure] in good faith sought the advice of a[ person they believed to be a competent professional] whom [they] considered competent to advise [them] on the matter; and
>
> 2. [They] consulted this [professional] for the purpose of securing advice on the lawfulness of [their] possible future conduct; and
>
> 3. [They] made a full and accurate report to [that professional] of all material facts that [they] knew; and
>
> 4. [They] then acted strictly in accordance with the advice of this [professional].

*United States v. Scully*, 877 F.3d 464, 476-77 (2d Cir. 2017).[5] Granting the SEC's argument that the Second Circuit's caselaw requires a showing as to each of these factors, I nonetheless conclude that Westport *has* made a preliminary showing sufficient to allow it to present evidence about its reliance on RC's advice. *See id.* at 464.

As the SEC itself sets out in detail in its motion *in limine*, there were several communications between RC and Westport that led to Westport's use of a disclosure statement that—even if inadequate as a matter of law, *see Westport Capital Markets*, 408 F. Supp. 3d 93 at 105—nonetheless gestured at Westport's many conflicts of interest. This evidence suggests that Westport sought and received advice on the lawfulness of its disclosures to its clients, advice

---

agreed to receive it) does not render the contracts determinative of that claim, which ultimately rests on what McClure and Westport thought they were doing—the ultimate issue at trial.

[5] *See also United States v. Colasuonno*, 697 F.3d 164, 180-81 (2d Cir. 2012); *Markowski v. SEC*, 34 F.3d 99, 105 (2d Cir. 1994); *United States v. Falcone*, 544 F.2d 607, 610 n. 6 (2d Cir. 1976); *SEC v. Am. Growth Funding II, LLC*, 2018 WL 6322145, at *5 n. 3 (S.D.N.Y. 2018).

7

Westport and McClure followed insofar as they included, verbatim, RC's proposed statement in its Forms ADV. *See* Doc. #79 at 13-14. This case does not resemble the facts in *United States v. Evangelista*, 122 F.3d 112 (2d Cir. 1997), where the attorney on whom defendants were said to have relied said under oath that far from giving defendants the advice they claimed to have received, counsel "gave precisely the opposite advice, and that the Evangelistas simply failed to follow it." *Id.* at 117.

To be sure, evidence that Westport and McClure fully appraised RC of their activities is controverted in many important respects by evidence provided by the SEC. Likewise, evidence that Westport and McClure had any good faith basis to rely on RC for legal advice is gainsaid by, among many other things, the contracts they signed pledging not to rely on RC for legal advice. But that there is evidence both ways is all the more reason for Westport and McClure's evidence to be presented to a jury. I will allow Westport and McClure to introduce evidence at trial concerning their communications with RC's compliance personnel.

## CONCLUSION

For the foregoing reasons, the SEC's motion *in limine* to preclude evidence of Westport or McClure's reliance on RC's advice is GRANTED insofar as it precludes Westport and McClure's ninth affirmative defense, GRANTED insofar as it seeks to preclude evidence concerning the work and knowledge of Walter Costenbader and Stacy Peters, but otherwise DENIED. It is so ordered.

Dated at New Haven this 27th day of February 2020.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge